909 P.2d 930 (1996)
128 Wash.2d 464
The STATE of Washington, Respondent,
v.
Robert Eugene FORTUNE, Petitioner.
No. 63001-1.
Supreme Court of Washington, En Banc.
January 25, 1996.
Rita Griffith, Seattle, Nielsen & Acosta, Eric Nielsen, Seattle, for petitioner.
Norm Maleng, King County Prosecutor, Pamela Mohr, Deputy, Seattle, for respondent.
DOLLIVER, Justice.
Petitioner/Defendant appeals his first degree murder conviction. The jury was not required to agree unanimously on whether Defendant premeditated the killing or committed it in the course of a robbery. Defendant contends this lack of unanimity violates his right to the due process of law.
Near the beginning of December 1990, Robert Fortune and Gregory Miller rented an apartment, which they shared as roommates. On January 9, 1991, Gregory Miller was found dead in their apartment. Miller had been killed by repeated blows to the head with a sledgehammer. The blood stains in the apartment indicated the victim had been attacked three different times at different places in the apartment, and during those attacks the victim had received at least 12 blows from a three-pound sledgehammer. Based upon their observation of the crime scene, police considered Defendant to be a suspect. Defendant was arrested on January 10, 1991, when he appeared at his job to pick up his paycheck. The State charged Defendant with first degree murder by means of premeditation, and the information was later amended to include the alternative means of felony murder with robbery as the predicate felony.
The State presented a strong case against Defendant. Before his death, Gregory Miller was concerned over the disappearance of several of his possessions from the apartment and had planned to ask Defendant to move out of the apartment. A pawn shop employee *931 purchased two of those missing items from Defendant three days before the victim's death. The police introduced this evidence to show Defendant had a pressing need for cash. Furthermore, Defendant used Miller's automatic teller machine (ATM) card to withdraw $300 from Miller's bank account on the afternoon of Miller's death, and Defendant made two more withdrawals of the same amount over the next two days, thereby emptying Miller's checking account.
The State presented two theories to the jury in closing argument. Based on the physical evidence at the crime scene, the State argued the attack was prolonged and thought out, showing premeditation. The State also argued the murder took place during the course of a robbery. The robbery consisted of Defendant's taking the victim's ATM card and possibly forcing the victim to reveal his personal identification number for the card. The jury instructions defined first degree murder, describing both premeditated murder and felony murder. The instructions required a unanimous verdict only on the general first degree murder charge. The jury was not required to agree unanimously on which of the alternative means, felony or premeditated murder, had been proved by the State. The jury found Defendant guilty of first degree murder.
Defendant claims his right to the due process of law under the federal and state constitutions was violated by his being convicted of first degree murder without having a unanimous jury finding as to which of the alternative means, premeditated or felony murder, supported the conviction. Defendant concedes that Schad v. Arizona, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), affirmed the constitutionality of a conviction in a nearly identical case involving alternative means, but Defendant claims Washington law differs from Arizona law, such that Schad should not control. We affirm Defendant's conviction.
In this state, if sufficient evidence supports each alternative means of a charged crime, jurors can give a general verdict on that crime without giving express unanimity on which alternative means was employed by the defendant. "If the evidence is sufficient to support each of the alternative means submitted to the jury, a particularized expression of unanimity as to the means by which the defendant committed the crime is unnecessary to affirm a conviction...." State v. Ortega-Martinez, 124 Wash.2d 702, 707-08, 881 P.2d 231 (1994). See also State v. Whitney, 108 Wash.2d 506, 511, 739 P.2d 1150 (1987); State v. Franco, 96 Wash.2d 816, 823, 639 P.2d 1320 (1982); State v. Arndt, 87 Wash.2d 374, 377, 553 P.2d 1328 (1976). Under Washington law, premeditated murder and felony murder "are alternative ways of committing the single crime of first degree murder." State v. Bowerman, 115 Wash.2d 794, 800, 802 P.2d 116 (1990); State v. Talbott, 199 Wash. 431, 437-38, 91 P.2d 1020 (1939). See also State v. Ellison, 36 Wash.App. 564, 574-75, 676 P.2d 531, review denied, 101 Wash.2d 1010 (1984).
Defendant has not questioned the evidence supporting his conviction. Instead, Defendant urges this court to scrutinize, for the first time, alternative means in light of federal due process concerns raised in Schad v. Arizona, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991). This court has reaffirmed alternative means cases since Schad was decided, but we have not previously considered the due process issue raised in Schad. See, e.g., State v. Ortega-Martinez, 124 Wash.2d 702, 881 P.2d 231 (1994) (upholding second degree rape conviction where the jury instruction presented the alternative theories of rape by forcible compulsion and rape through intercourse with a victim who is mentally incapable of consentno discussion of Schad).
Schad involved a factual situation nearly identical to this case. Edward Schad was charged with first degree murder in Arizona. Schad, 501 U.S. at 629, 111 S.Ct. at 2495-96. The jury was given instructions describing premeditated murder and felony murder, and the jury was required to render a unanimous verdict only as to the general charge of first degree murder. Arizona law allowed for capital punishment under either theory. The jury found Schad guilty, and he was sentenced to death. The defendant claimed the jury should have been required to agree unanimously on a single theory of first degree *932 murder, but the Arizona Supreme Court rejected his argument and upheld the conviction. State v. Schad, 163 Ariz. 411, 788 P.2d 1162 (1989). The United States Supreme Court granted certiorari. Schad v. Arizona, 498 U.S. 894, 111 S.Ct. 243, 112 L.Ed.2d 202 (1990).
Under Arizona law, felony murder and premeditated murder are alternative ways of satisfying the single mens rea element of first degree murder. Schad, 501 U.S. at 639, 111 S.Ct. at 2500-2501. The central question then was whether the Arizona Legislature could properly allow a jury to convict the defendant by combining findings of alternative mental states, "the one being premeditation, the other the intent required for murder combined with the commission of an independently culpable felony." Schad, 501 U.S. at 632, 111 S.Ct. at 2497. The plurality decision determined due process is implicated only at "the point at which differences between means become so important that they may not reasonably be viewed as alternatives to a common end, but must be treated as differentiating what the Constitution requires to be treated as separate offenses." Schad, 501 U.S. at 633, 111 S.Ct. at 2498. If a state legislature groups together two or more alternative ways of satisfying an element of a crime, but due process requires that those alternative means be treated as different offenses, then jury unanimity would be required for each of those offenses under In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
The plurality was unable to formulate an adequate bright line test to determine when alternative means had to be treated as separate offenses. Instead, the plurality created a new and extremely vague "moral equivalence" test:
If, then, two mental states are supposed to be equivalent means to satisfy the mens rea element of a single offense, they must reasonably reflect notions of equivalent blameworthiness or culpability, whereas a difference in their perceived degrees of culpability would be a reason to conclude that they identified different offenses altogether. Petitioner has made out no case for such moral disparity in this instance. Schad, 501 U.S. at 643, 111 S.Ct. at 2503. Whenever "it is clear that such equivalence could reasonably be found," alternative means should be allowed to satisfy the mental element of a single crime. (Italics ours.) Schad, 501 U.S. at 644, 111 S.Ct. at 2503-2504.
The plurality asserted neither history nor current practice controls the outcome of its novel moral equivalence analysis. Schad, 501 U.S. at 642, 111 S.Ct. at 2502-2503. Despite this disclaimer, the plurality's approval of Arizona's alternative means for first degree murder rested entirely upon an analysis of history and modern practice. The plurality found it "significant that Arizona's equation of the mental states of premeditated murder and felony murder as species of the blameworthy state of mind required to prove a single offense of first-degree murder finds substantial historical and contemporary echoes." Schad, 501 U.S. at 640, 111 S.Ct. at 2501. Arizona's defining premeditated and felony murdermore specifically, murder committed in the course of a robberyas alternative means was supported by over 100 years of common law history in many state jurisdictions, Schad, 501 U.S. at 640-43, 111 S.Ct. at 2501-2503, such that "it is clear that [moral] equivalence could reasonably be found" between those alternative means. Schad, 501 U.S. at 644, 111 S.Ct. at 2503.
Justice Scalia concurred with the plurality, but disagreed with the plurality's due process analysis. He would have based the due process analysis explicitly and solely on historical practice without creating the vague and unhelpful moral equivalence analysis. Schad, 501 U.S. at 651, 111 S.Ct. at 2507 (Scalia, J., concurring in part and in judgment). Submitting premeditated murder and felony murder to the jury under a single charge "was the norm when this country was founded, was the norm when the Fourteenth Amendment was adopted in 1868, and remains the norm today." Schad, 501 U.S. at 651, 111 S.Ct. at 2507 (Scalia, J., concurring in part and in judgment).
Defendant argues that the Washington Legislature did not intend to make premeditated murder and felony murder alternative ways of establishing the mens rea element of *933 first degree murder. As opposed to Arizona law, under which capital punishment can be imposed on a base crime of either premeditated murder or felony murder, Washington law imposes capital punishment just on the base crime of premeditated murder. See RCW Chapter 10.95. If the Legislature decided to impose capital punishment only on premeditated murder, but not on felony murder, then, according to Defendant, those two types of murder could not be morally equivalent and interchangeable mens rea elements of first degree murder. If they are not interchangeable elements, then a jury would have to specifically and unanimously agree on each element of the crime.
Defendant's argument fails on two grounds. First, the facts in Defendant's case do not conform to his argument. The Legislature chose to impose capital punishment only on some premeditated murdersthose where aggravating circumstances are unanimously found by a jury. RCW Chapter 10.95. According to Defendant, this potential difference in punishment between premeditated murder and felony murder proves the two types of murder are not interchangeable elements of first degree murder. However, there is no difference in potential punishment between the two alternative means charged in Defendant's case.
Defendant's first degree murder conviction involved the alternative theories of felony murder and premeditated murder without aggravating circumstances. A conviction under either of those alternative theories results in identical consequences: First degree murder is a Class A felony. RCW 9A.32.030(2). A Class A felony conviction can have a maximum sentence of life imprisonment. RCW 9A.20.021(1)(a). A first degree murder conviction has a seriousness level of 14 under the Sentencing Reform Act of 1981. RCW 9.94A.320. All of the consequences of the first degree murder conviction are identical whether the underlying theory was felony murder or non-aggravated premeditated murder. There is no difference in potential sentences for the alternative theories charged in Defendant's case; thus, there is no evidence supporting Defendant's contention that the Legislature intended to treat those alternative theories as separate offenses.
Even if there existed a potential difference in punishment under each of the alternative means charged in Defendant's case, Defendant's conviction would still pass constitutional muster. Defendant's focus on the potential difference in punishment misinterprets Schad's holding. The plurality's moral equivalence analysis focused on the permissibility of a state's definition of alternative means of a single offense; the analysis did not take into account or question the permissibility of the sentence imposed on a guilty defendant. Schad, 501 U.S. at 644 n. 9, 111 S.Ct. at 2504 n. 9.
When the Court of Appeals analyzed Fortune's argument below, the court gave an excellent analysis of Schad's distinction between the definition of a crime and the possible punishment that can be imposed on that crime:
Furthermore, Schad does not support Fortune's argument that the existence of a potentially higher penalty for one of the alternative means mandates the conclusion that the Legislature has determined that the mental states of the alternative means are not moral equivalents. The Arizona statute considered in Schad authorized the same maximum penalty, death, for both the felony murder and premeditated murder means of committing first degree murder. 501 U.S. at 644 n. 9, 111 S.Ct. at 2504 n. 9. However, the plurality did not rely on the fact that the two carried the same penalty in determining that the mental states of the two means are moral equivalents. Punishment was not relevant to the Schad plurality's resolution of the question of whether the Arizona Legislature had violated due process in defining the alternative means of committing first degree murder....
A higher actual or potential penalty for an alternative means of committing a crime reflects a number of public policy considerations which do not necessarily correlate to the moral equivalency of the mens rea of the alternative means of committing a crime. The aggravated murder statute, for example, evinces a public policy *934 that premeditated murder of certain victims, by certain persons, or under certain circumstances should be punished more severely than other instances of premeditated murder. It is the presence of these additional facts that the Legislature has determined makes the crime more reprehensible or socially harmful than it would be in the absence of those facts. This determination does not affect the mens rea of the underlying crime.
(Citations omitted.) State v. Fortune, 77 Wash.App. 628, 633, 893 P.2d 670 (1995). See also State v. Tang, 77 Wash.App. 644, 893 P.2d 646, review denied, 127 Wash.2d 1017, 904 P.2d 299 (1995) (upholding a conviction for vehicular homicide where the jury instructions gave alternative means for committing the crime, and each of the alternative means had a different seriousness level under the Sentencing Reform Act of 1981).
The Court of Appeal's reasoning in this case below disposes of Defendant's argument. The only distinguishable difference between the alternative means in Schad and the alternative means in this case is the potential difference in punishment under Washington law. However, Schad's holding did not rest upon an analysis of the punishment imposed upon the alternative means.
Even though the Schad plurality justified its holding by appealing to a vague and unprecedented moral equivalence analysis, the plurality's reasoning was based entirely on an analysis of historical and current practice. The Court noted that many states treat "premeditated murder and some form of felony murder (invariably including murder committed in perpetrating or attempting to perpetrate a robbery) as alternative means of satisfying the mental state that first-degree murder presupposes." Schad, 501 U.S. at 641, 111 S.Ct. at 2502. First degree murder under Washington Law is similar to the laws cited with approval in Schad, 501 U.S. at 641-42, 111 S.Ct. at 2502-2503. Even before this state joined the union, the Legislative Assembly of the Territory of Washington had defined felony murder and premeditated murder as alternative ways of committing first degree murder:
Every person who shall purposely, and of deliberate and premeditated malice, or in the perpetration, or attempt to perpetrate any rape, arson, robbery or burglary,... kill another, every such person shall be deemed guilty of murder in the first degree....
(Italics ours.) 1869 Wash. Territory Laws ch. 11, § 12, p. 200. In 1909 the Washington State Legislature restructured the definition of first degree murder, but continued to treat felony and premeditated murder as alternative means:
The killing of a human being, unless it is excusable or justifiable, is murder in the first degree when committed either
1. With a premeditated design to effect the death of the person killed, or of another; or
. . .
3. Without a design to effect death, by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a robbery, rape, burglary, larceny or arson in the first degree; ...
. . .
Murder in the first degree shall be punished by death or by imprisonment in the state penitentiary for life, in the discretion of the court.
1909 Wash.Laws ch. 249, § 140, p. 930. The basic form of this early statute closely resembles the current version. See RCW 9A.32.030. As far back as 1939, this court upheld a general verdict of guilt for first degree murder where the jury did not specify whether the verdict related to the counts of felony murder or premeditated murder. State v. Talbott, 199 Wash. 431, 437-38, 91 P.2d 1020 (1939) ("The two counts do not charge different offenses, but merely charge the same offense in different ways...."). This state's legislative history conforms to the historical practices cited in Schad. Schad's approval of the alternative means for first degree murder is controlling in this case.
Defendant claims the jury's lack of unanimity as to the alternative means also violated his state due process rights. Although the federal courts' interpretations of *935 federal law are not binding on this state's interpretation of parallel state laws and constitutional provisions, the opinions of the United States Supreme Court "are nevertheless important guides on the subjects which they squarely address." State v. Gunwall, 106 Wash.2d 54, 61, 720 P.2d 808, 76 A.L.R.4th 517 (1986) (quoting State v. Hunt, 91 N.J. 338, 363, 450 A.2d 952 (1982)). Six criteria must be met before this court will question whether "the constitution of the State of Washington should be considered as extending broader rights to its citizens than does the United States Constitution." Gunwall, 106 Wash.2d at 61, 720 P.2d 808. See State v. Ortiz, 119 Wash.2d 294, 302-05, 831 P.2d 1060 (1992).
Defendant presented no argument for why the state due process clause should be interpreted more broadly than its federal counterpart. Defendant did not make the slightest attempt to address the Gunwall criteria. Since the language of Wash. Const. art. I, § 3 is identical to the language of the due process clause contained in the Fourteenth Amendment to the United States Constitution, we find that Schad`s analysis of the federal due process issue equally disposes of Defendant's state due process challenge.
Although we hold that due process does not require express jury unanimity as to alternative means of a single crime, we emphasize the desirability of having jury unanimity on all aspects of a conviction. State v. Ortega-Martinez, 124 Wash.2d 702, 717 n. 2, 881 P.2d 231 (1994); State v. Whitney, 108 Wash.2d 506, 511, 739 P.2d 1150 (1987). Requiring the jury to be unanimous as to particular alternative means eliminates the possibility of a conviction being overturned should one of those alternatives not be supported by substantial evidence. Whitney, 108 Wash.2d at 511, 739 P.2d 1150.
Since Defendant did not challenge the evidence in his case, we affirm his conviction.
DURHAM, C.J., and SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, TALMADGE and PEKELIS, JJ., concur.