184 P.3d 1256 (2008)
STATE of Washington, Respondent,
v.
Felipe Joseph RAMOS, Petitioner.
State of Washington, Respondent,
v.
Mario Alejandro Medina, Petitioner.
Nos. 77347-5, 77360-2.
Supreme Court of Washington, En Banc.
Argued September 25, 2007.
Decided June 12, 2008.
*1257 Thomas Michael Kummerow, Washington Appellate Project, Suzanne Lee Elliott, Attorney at Law, Seattle, WA, for Petitioner.
Jeffrey C. Dernbach, Andrea Ruth Vitalich, King County Prosecutor's Office, Seattle, WA, for Respondent.
ALEXANDER, C.J.
¶ 1 The issue before us is whether the trial court correctly determined that the defendants may be tried on a charge of first degree manslaughter. We hold that they may be tried for that charge and, therefore, affirm the trial court.

I
¶ 2 In 1997, Mario Medina lived with his sister, Maria, and her ex-husband, Felipe Ramos. On the evening of September 13, 1997, Ms. Medina showed up late for work at a motel. The motel manager, Joe Collins, confronted her about her tardiness and then sent her home early. After Ms. Medina recounted to her brother and Ramos what had happened to her at the motel, Ramos and Mario Medina decided to confront Collins. Before driving to the motel, the two men obtained a gun and ammunition for it. Upon arriving at the motel, Ramos parked the car in the far corner of the parking lot near an exit, backing it up next to a dumpster. Ramos and Medina then went to Collins' apartment and knocked on the door. When Collins answered, Medina asked him if he "had a problem with Maria." State v. Ramos, 124 Wash.App. 334, 336, 101 P.3d 872 (2004). Before Collins could answer the question, either Ramos or Medina shot him in the head.[1] Collins died from the gunshot wound.
¶ 3 The State charged both Ramos and Medina with first degree murder for the killing of Collins. At trial, in addition to instructing the jury on first degree murder, the trial judge instructed on the lesser degree offense of second degree murder by the alternative means of intentional murder and felony murder predicated on assault. The jurors were instructed to consider second degree murder only if they acquitted the defendants of first degree murder or if they could not agree on that crime after full and careful consideration. The jurors were further instructed that they need not be unanimous as to either alternative means in order to find the defendants guilty of second degree murder. When the jurors returned their verdict, they left the first degree murder verdict form blank and found Ramos and Medina each guilty of the lesser charge, second degree murder. They additionally found that the defendants were armed with a firearm for purposes of the firearm enhancement.
¶ 4 After the jury reached its verdict, the State requested that the jury answer a special interrogatory regarding the alternative means for second degree murder. The interrogatory asked whether the jurors unanimously agreed that intentional murder had been proved beyond a reasonable doubt. It also asked whether the jury unanimously agreed that felony murder had been proved beyond a reasonable doubt. As to each of these questions, the jury was asked to answer either "yes" or "no." While considering the special interrogatory, the jury submitted the following written questions to the trial court: "(1) If we answer no to 2a [intentional murder] does that mean that we unanimously agree intent did not occur or exist? (2) Does answering no to 2a [intentional murder] indicate *1258 that we could not unanimously agree on intent? Please answer seperately [sic]." Clerk's Papers (CP) at 135.
¶ 5 The trial court responded "no" to the first question and "yes" to the second question. Id. Following receipt of the trial court's answers to its questions, the jury answered the special interrogatory "no" as to intentional murder, and "yes" as to felony murder. Id. at 178. The defendants subsequently received standard-range sentences.
¶ 6 On appeal, the Court of Appeals, Division One, vacated the defendants' convictions based on our decision in In re Personal Restraint of Andress, 147 Wash.2d 602, 56 P.3d 981 (2002). Ramos, 124 Wash.App. at 343, 101 P.3d 872. Because the State indicated that upon remand it intended to recharge the defendants with first degree manslaughter, the Court of Appeals addressed the defendants' claim that the mandatory joinder rule prohibited the State from pursuing that charge. Id. at 338, 101 P.3d 872. The Court of Appeals concluded that the mandatory joinder rule did not prohibit the State from charging the defendants with manslaughter. Id. at 342-43, 101 P.3d 872. However, it remanded the case back to the trial court for further proceedings, indicating that other "factors may be relevant," perhaps thinking of a double jeopardy issue. Id. at 343, 101 P.3d 872. Neither the State nor the defendants appealed that decision.
¶ 7 On remand, the State did as it indicated it would and charged each of the defendants with first degree manslaughter.[2] The defendants then moved to dismiss the charge against them based on the mandatory joinder rule. Medina added double jeopardy grounds to his motion. The trial court denied the motions and certified the matter to us for direct review. See RAP 2.3(b)(4); CP at 75-76, 89, 127. We granted review.

II
¶ 8 The defendants contend that the jury in the prior trial actually or impliedly acquitted them of second degree murder and, consequently, double jeopardy principles bar recharging them with the lesser included offense of manslaughter.[3] Double jeopardy "protects against a second prosecution for the same offense after acquittal." North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). The well-settled alternative means analysis that applies in this case dictates that
where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means [submitted to the jury].
State v. Kitchen, 110 Wash.2d 403, 410, 756 P.2d 105 (1988) (citing State v. Whitney, 108 Wash.2d 506, 739 P.2d 1150 (1987); State v. Franco, 96 Wash.2d 816, 639 P.2d 1320 (1982); State v. Arndt, 87 Wash.2d 374, 553 P.2d 1328 (1976)). "In reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt." Id. at 410-11, 553 P.2d 1328 (citing Franco, 96 Wash.2d at 823, 639 P.2d 1320) (citing State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980)). If the alternatives submitted to the jury truly describe alternative means of committing a single crime, rather than separate crimes, jury unanimity as to each alternative mean is not required under either the state or federal constitution. State v. Fortune, 128 Wash.2d 464, 909 P.2d 930 (1996); see also Schad v. Arizona, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991); State v. *1259 Williams, 136 Wash.App. 486, 150 P.3d 111 (2007).
¶ 9 The alternative means principle dictates that when a jury renders a guilty verdict as to a single crime, but one of the alternative means for committing that crime is later held to be invalid on appeal and the record does not establish that the jury was unanimous as to the valid alternative in rendering its verdict, double jeopardy does not bar retrial on the remaining, valid alternative mean. State v. Joy, 121 Wash.2d 333, 345-46, 851 P.2d 654 (1993); State v. Bland, 71 Wash.App. 345, 358, 860 P.2d 1046 (1993), overruled in part on other grounds by State v. Smith, 159 Wash.2d 778, 154 P.3d 873 (2007); State v. Gillespie, 41 Wash.App. 640, 645-46, 705 P.2d 808 (1985). This is the case even when one alternative mean has been reversed on appeal due to a finding of insufficient evidence, a finding that has the same double jeopardy implications as an outright acquittal in other circumstances. See Burks v. United States, 437 U.S. 1, 16, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); State v. DeVries, 149 Wash.2d 842, 853, 72 P.3d 748 (2003).
¶ 10 Intentional murder and felony murder are alternative means of committing the crime of second degree murder. State v. Berlin, 133 Wash.2d 541, 552-53, 947 P.2d 700 (1997). In the instant case, there was sufficient evidence to sustain a conviction for second degree murder under each of these alternative means. Specifically, substantial evidence supported the alternative mean of intentional murder. In this regard, there was evidence that (1) Ramos and Medina obtained a gun and ammunition prior to confronting Collins, (2) Ramos and Medina drove to the motel and, upon arriving, parked the car near an exit, backing it next to a dumpster, and (3) either Ramos or Medina shot Collins from point-blank range in the head. Accordingly, the trial court correctly and explicitly instructed the jurors that they need not be unanimous as to either alternative in order to find the defendants guilty of second degree murder. In responding to the special interrogatory regarding alternative means, the jurors indicated that they were unanimous as to felony murder, but were not unanimous as to intentional murder. The fact that the jurors were not unanimous as to the intentional murder alternative is of no consequence here for double jeopardy purposes since they were properly instructed that they need not be unanimous as to either alternative. The jurors' response to the special interrogatory and their questions of the trial court did not amount to an express or implied acquittal of the defendants. So long as the jurors were unanimous as to the crime of second degree murderwhich they weretheir unanimity as to either alternative mean was not necessary.
¶ 11 Finally, because jeopardy continues for second degree intentional murder and manslaughter is a lesser included offense of second degree intentional murder, the mandatory joinder rule does not prohibit retrial for the first degree manslaughter charge. We, therefore, affirm the trial court's denial of the defendants' motion to dismiss the charge.
WE CONCUR: SUSAN OWENS, CHARLES W. JOHNSON, MARY E. FAIRHURST, JAMES M. JOHNSON, TOM CHAMBERS, Justices, BOBBE J. BRIDGE, Justice Pro Tem., and TERESA C. KULIK, Justice Pro Tem, JJ.
SANDERS, J. (dissenting).
¶ 12 The majority permits the State to retry Felipe Ramos and Mario Medina for manslaughter, holding jeopardy did not terminate on second degree intentional murder. I disagree; jeopardy terminated when the Court of Appeals held Ramos and Medina were acquitted of second degree intentional murder. State v. Ramos, 124 Wash.App. 334, 343, 101 P.3d 872 (2004) (holding, "the jury expressly found that the State failed to prove [Ramos and Medina] acted with intent"). This is the law of this case, terminating jeopardy because an acquittal on second degree intentional murder includes the lesser offense of first degree manslaughter. State v. Berlin, 133 Wash.2d 541, 551, 947 P.2d 700 (1997); Brown v. Ohio, 432 U.S. 161, 169, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); see also RAP 2.5(c)(2).

*1260 The Law of the Case Is Express Acquittal of Second Degree Intentional Murder

¶ 13 Under the law of the case doctrine:
"[T]he parties, the trial court, and this court are bound by the holdings of the court on a prior appeal until such time as they are `authoritatively overruled.' Such a holding should be overruled if it lays down or tacitly applies a rule of law which is clearly erroneous, and if to apply the doctrine would work a manifest injustice to one party, whereas no corresponding injustice would result to the other party if the erroneous decision should be set aside." Folsom v. County of Spokane, 111 Wash.2d 256, 264, 759 P.2d 1196 (1988) (quoting Greene v. Rothschild, 68 Wash.2d 1, 10, 402 P.2d 356, 414 P.2d 1013 (1965)); see also RAP 2.5(c)(2).
¶ 14 In other words, the law of the case is avoided only if the prior decision was clearly erroneous and this clearly erroneous decision works some manifest injustice. Here, the Court of Appeals decision was not clearly erroneous but clearly correct, at least based on the record before it.
¶ 15 In Ramos the Court of Appeals held, "the jury expressly found that the State failed to prove [Ramos and Medina] acted with intent. . . ." Ramos, 124 Wash.App. at 343, 101 P.3d 872. The State did not argue the contrary nor did it seek further review. The State never moved to supplement the record despite several stays in the proceedings and the obvious change in the post-Andress[1] legal environment. Id. at 337, 101 P.3d 872. Only now does the State seek to contest the prior Court of Appeals holding that Ramos and Medina were expressly acquitted of second degree intentional murder.
¶ 16 On the record before the Ramos court, it cannot be said its decision was clearly erroneous. See, e.g., State v. Wilson, 75 Wash.2d 329, 450 P.2d 971 (1969) (evidence not in the record will not be considered on appeal). In fact given the record before the Ramos court, its decision that both defendants were acquitted of intentional murder was clearly correct. Ramos, 124 Wash.App. at 343 n. 31, 101 P.3d 872 (discussing the jury verdict).
¶ 17 The law of the case doctrine is discretionary. See Roberson v. Perez, 156 Wash.2d 33, 41, 123 P.3d 844 (2005). However, we should not permit a party to ignore an issue on the first appeal only to raise the issue on remand when it becomes apparent the initially ignored issue is critical to the party's case. The role of the independent judiciary is to apply the law impartially, not necessarily to favor one party over another. Here, this court is invited to fix an alleged error of one party's own making, an invitation we should decline.
Double Jeopardy Bars Retrial
¶ 18 The Fifth Amendment to the United States Constitution guarantees "[n]o person shall be . . . subject for the same offense to be twice put in jeopardy of life or limb." Article I, section 9 of the Washington Constitution guarantees "[n]o person shall . . . be twice put in jeopardy for the same offense." These principles bar successive prosecutions of greater and lesser offenses. Brown, 432 U.S. at 169, 97 S.Ct. 2221. First degree manslaughter is a lesser included offense of second degree intentional murder. Berlin, 133 Wash.2d at 551, 947 P.2d 700. Therefore, the defendants' acquittal of second degree intentional murder precludes the State from retrying them for manslaughter. See Ramos, 124 Wash.App. at 342-43, 101 P.3d 872; see also Brown, 432 U.S. at 169, 97 S.Ct. 2221.

Conclusion
¶ 19 The Court of Appeals in the first appeal properly held the defendants were acquitted of intentional murder given the record before it. The State failed to supplement the record or seek further review. The law of this case is acquittal. Because the defendants were acquitted of intentional murder, and manslaughter is a lesser included offense, double jeopardy bars retrial for manslaughter.
¶ 20 I dissent.
NOTES
[1] Medina confessed to shooting Collins but later recanted his confession. At trial, each claimed that the other had obtained the gun and shot Collins.
[2] Although the State indicated at oral argument here and in its respondent's brief at 13 that the defendants should be retried for second degree intentional murder, that question is not before us since the State only recharged them with first degree manslaughter.
[3] As we observe above, only Medina raised this issue at the trial court. CP at 68-74. Ramos, however, indicated in the reply brief of the petitioner that he joined in the argument that double jeopardy prevents the defendants from being tried for first degree manslaughter. Reply Br. of Pet'r at 3.
[1] In re Pers. Restraint of Andress, 147 Wash.2d 602, 56 P.3d 981 (2002).