# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72431-2-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JOHNNY DALE FULLER, | ) | |
| Appellant. | ) | FILED: November 24, 2014 |

TRICKEY, J. — The principle of double jeopardy protects one from being twice put in jeopardy for the same crime. Here, the defendant was charged in separate counts with two alternative means of committing assault in the second degree. The jury acquitted on one count but failed to reach a verdict on the other count. The trial court declared a mistrial for that count. Because jeopardy did not attach to that charge, the defendant can be retried. Affirmed.

## FACTS

Vincent Nix scoured the neighborhood searching for his seven-year-old son's bicycle that was last seen on a landing outside his front door. Several neighbors were also missing children's bicycles, including Robert Scott.

Johnny Fuller lived a few blocks away and had been repairing old bicycles since he was nine years old. He finds abandoned bicycles thrown away or sold at thrift stores. Fuller repairs the bicycles and then sells them.

Based on information received from one of the neighborhood children, Nix went to Fuller's house and pretended that he was interested in purchasing a bicycle for his son. He described the type of bicycle he wanted. Fuller retrieved a bicycle with a Harley Davidson logo that Nix recognized as his son's bicycle. Nix and Fuller agreed on

a price of $10.00 and Nix said he needed to go get money. Instead, Nix went to Scott whose daughter was missing a "princess" bicycle.[1]

Nix and Scott then went to Fuller's house. Nix told Fuller that Scott was also interested in a bicycle. Scott began to look under the tarp where Fuller kept his collection of bicycles. Fuller, getting ready to eat his lunch, told Scott he could not show him any bicycles right then. Nix then informed Fuller he did not intend to buy the bicycle with the Harley Davidson logo because it in fact belonged to him. Fuller initially disagreed with Nix, but once Nix described the bicycle as having training wheels, Fuller believed Nix and told him to take the bicycle and leave.

Nix did not leave, stating that he was going to call the police. Scott stayed and continued to look for his daughter's bicycle, saying he was not leaving until the police arrived. Fuller told both men to leave, but they refused. Fuller went inside his house. Neither Scott nor Nix had called the police when Fuller went inside his house.

Fuller came back outside the house with an aluminum baseball bat in this hand. Afraid that he was going to be hit with the bat, Nix backed up far enough so that he would not be hit. Fuller then turned toward Scott who did not retreat.[2] Scott said he was not going to move and told Fuller, "Hit me."[3] Fuller took a swing and hit Scott in the face and shoulder.

Scott became angry and went after Fuller. Scott placed Fuller in a bear hug, causing both men to fall to the ground. Before they fell, Nix tried to get the baseball bat away, but unable to do so he just backed off. When Scott and Fuller fell to the ground, Nix was able to remove the baseball bat. Scott and Nix both denied hitting Fuller.

---

[1] 2 Report of Proceedings (RP) at 181-82.
[2] 2 RP at 152.
[3] 2 RP at 153, 176.

2

Fuller testified that after he was tackled to the ground, he was repeatedly punched and kicked. A bystander testified that both Nix and Scott hit Fuller several times when he was on the ground. Nix got the baseball bat away and the fight ended. Police arrived in response to several 911 calls, including Nix's and Fuller's.

Scott suffered a dislocated right shoulder when he fell to the ground after tackling Fuller. He had a rotator cuff injury, although surgery revealed a pre-existing injury to that shoulder. Scott complained of numbness in his left hand and he received surgery on his ulnar nerve. Dr. Spencer Coray, the treating physician, testified that although the nerve can be damaged from compression to the arm, a blow to the outer arm was not likely to cause that injury. Scott had worked in computer technology and the physician testified that the type of injury suffered by Scott occurs with people who work at a desk and on a computer.

The State charged Fuller with four offenses: count 1, second degree assault with a deadly weapon with Scott as the victim; count 2, second degree assault recklessly inflicting substantial bodily harm also with Scott as the victim; count 3, first degree trafficking in stolen property; and count 4, third degree possession of stolen property.

In closing argument, the State maintained that both assault charges were based on the identical act—Fuller striking Scott in the upper arm with a baseball bat. The remaining two counts were based on Fuller's possession of and attempt to steal the bicycle belonging to Nix's son.

Jurors deadlocked on the second degree assault with a deadly weapon and acquitted Fuller on all the other counts. Fuller moved to dismiss the charge in count 1 with prejudice arguing that it was the same offense that jurors had acquitted him on in

count 2 and therefore any prosecution would violate double jeopardy. Fuller appeals the court's denial of his motion.

ANALYSIS

Claims of double jeopardy raise questions of law which this court reviews de novo. State v. Turner, 169 Wn.2d 448, 238 P.3d 461 (2010). Both the federal and state constitutions protect one from being twice put in jeopardy for the same offense. Turner, 169 Wn.2d at 454; U.S. CONST. amend. V; WASH. CONST. art. I, § 9.

Fuller argues that the assault charges in counts 1 and 2 are the same offense for double jeopardy purposes and that his acquittal on count 2 precludes any further prosecution for the assault in count 1. But the mere fact that the counts may merge or be dismissed at sentencing, does not require the dismissal of the charge until the jury has made a final determination. Here, the jury has not made a final determination on assault with a deadly weapon. As noted by the Supreme Court in State v. Michielli, 132 Wn.2d 229, 238-39, 937 P.2d 587 (1997):

> The [merger] doctrine does not prevent the State from *charging* a defendant with multiple crimes, even when those crimes *may* merge. The question of merger arises only after the State has successfully obtained guilty verdicts on the charges that allegedly merge—if the jury acquits on one of the charges, the merger issue never arises. The court cannot use the merger doctrine to dismiss a charge prior to trial because the court cannot predict on which charges the defendant will be convicted.

Here, the jury specifically acquitted Fuller of assault that caused substantial harm (count 2), but was unable to reach a decision on count 1.

This case is more like State v. Garcia, 179 Wn.2d 828, 318 P.3d 266 (2014). There, the defendant was charged with first degree burglary and first degree kidnapping. The State charged Garcia with first degree kidnapping under three

alternative means: (1) holding the victim as a shield or hostage; (2) intending to inflict extreme mental distress; or (3) facilitating the commission of a second degree burglary or flight therefrom.[4] The jury found Garcia guilty. On appeal, the court determined the evidence to be insufficient to support the first two alternative means and remanded for a new trial on the remaining alternative, stating:

> Because there is not sufficient evidence to support two of the three alternative means of kidnapping presented to the jury, Garcia's kidnapping conviction must be reversed, and we remand for a new trial consistent with this opinion. See State v. Wright, 165 Wn.2d 783, 803 n.12, 203 P.3d 1027 (2009) ("The Washington Constitution provides greater protection of the jury trial right [than the federal constitution], requiring reversal if it is impossible to rule out the possibility the jury relied on a charge unsupported by sufficient evidence. Significantly, however, a defendant in such a position is entitled only to a new trial, not an outright acquittal, unless the record shows the evidence was insufficient to convict on any charged alternative." (citations omitted)). The trial court may not retry Garcia on the two alternative means for which we hold there is insufficient evidence. See State v. Ramos, 163 Wn.2d 654, 660-61, 184 P.3d 1256 (2008); State v. Joy, 121 Wn.2d 333, 345-46, 851 P.2d 654 (1993).

Garcia, 179 Wn.2d at 843-44 (alteration in original).

Similarly, here, the jury has found insufficient evidence to convict Fuller of assault by the means charged in count 2. The matter should be remanded for a new trial on the surviving alternative. This is so because the original jeopardy for that assault never terminated. State v. Strine, 176 Wn.2d 742, 746, 293 P.3d 1177 (2013).

The Supreme Court reached a similar conclusion in an analogous situation in State v. Ramos, 163 Wn.2d 654, 184 P.3d 1256 (2008). There, the jury returned a general verdict of guilty for second degree murder, charged in the alternative as intentional murder and felony murder predicated on assault. Ramos, 163 Wn.2d at 657-58. By special interrogatory, the jury indicated unanimous agreement on the felony

---

[4] Garcia, 179 Wn.2d at 836.

5

murder alternative, but no unanimity on intentional murder. The Ramos court rejected the defense argument that the jury impliedly acquitted the defendant of intentional murder. Here, there was no acquittal of assault with a deadly weapon. The jeopardy only attached to the assault causing substantial bodily harm.

Support for this position is found in State v. Daniels, 160 Wn.2d 256, 265, 156 P.3d 905 (2007). The State charged Daniels with felony murder based on alternative predicate offenses—second degree assault and criminal mistreatment—and the jury returned a general verdict of guilt. The Court of Appeals reversed on the invalidity of the assault means and remanded for retrial on the criminal mistreatment means. As here, Daniels argued that retrial was barred by double jeopardy because the jury returned a general verdict and therefore the court "should infer the jury acquitted her of second degree felony murder predicated on criminal mistreatment." Daniels, 160 Wn.2d at 265. In rejecting this argument, the Supreme Court reiterated the well-established rule that double jeopardy does not bar a prosecution on the same charge if a conviction is reversed for any reason other than insufficient evidence. Daniels, 160 Wn.2d at 265.

Affirmed.

Trickey, J

WE CONCUR:

Spearman, J

Cox, J.

6