IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80016-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| KATRINA R. LOOS, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

ANDRUS, A.C.J. — Katrina Loos challenges her conviction for assault in the fourth degree, contending it is barred by the statute of limitations. She further argues that the trial court erred in instructing the jury as to fourth degree assault because it is neither a lesser included nor an inferior degree offense of the crime with which she was charged, assault of a child in the third degree. Lastly, she contends the State presented insufficient evidence of assault of a child in the third degree.

We conclude that Loos may not raise the statute of limitations for the first time on appeal. But because assault in the fourth degree is not an inferior degree offense to third degree assault of a child, we reverse Loos's conviction. Finally, we conclude the State failed to present sufficient evidence that Loos's actions caused the toddler in her care to experience substantial pain that endured for a

period of time long enough to cause considerable suffering. The State is therefore precluded from retrying her on that charge.

FACTS

On June 15, 2015, Katrina Loos was babysitting J.T.S., a nonverbal, speech-delayed two-and-a-half-year-old toddler whom she had cared for throughout his infancy. Loos and a friend, Leah Tetzlaff, decided to take a group of seven children to swim in the Jordan River that day. Tetzlaff brought her two sons, T.L, age 16, and R.L., age five. Loos brought her two children, M.L., age 11, and G.L., age five. Loos also brought along three children for whom she was babysitting: M., age eight, T., age three, and J.T.S.

While swimming in the river, Tetzlaff became concerned about Loos's conduct. First, she recalled, Loos became angry and hostile toward another beachgoer whose dog came close to the children. Then Loos began attempting to teach the three-year-old girl in her care to swim, but the girl resisted Loos's efforts, began to cry and said she did not want to participate in swimming lessons. Tetzlaff then recounted that Loos saw one of the children in Loos's care, an older girl, splash water in the face of one of Loos's children. Loos dunked the girl's face under the water and said "how do you like that, now you see how it is? Do you like that?" The little girl began to cry and came out of the water gasping for breath.

At that point, Loos indicated that it was time for J.T.S., who was sitting on the beach playing with toys, to get into the water. Tetzlaff testified that Loos picked up J.T.S. and said "it's time to swim." According to Tetzlaff, Loos said something about "how naturally buoyant he was" because he was "chubby and fat" and then

- 2 -

"she just dropped him in the water and he literally just sank like a rock." After a moment, Loos picked him up out of the water and consoled him as he screamed and cried. Tetzlaff's oldest son, T.L., corroborated this incident. Loos denied she dropped J.T.S. in the water to see if he would float.

Then Tetzlaff heard Loos tell J.T.S. she was going to teach him to swim. By this time Tetzlaff decided to video what Loos was doing. The second incident, during which Loos claimed she was giving J.T.S. a swimming lesson, was captured on video. In the 51-second video, Loos can be seen holding J.T.S. on his back in the water, and is heard telling him "when we scream, we go under." After a moment, J.T.S. was submerged in the water for a few seconds and Loos pulled him back up out of the water. Loos repositioned J.T.S. on his back, at which point he began to struggle and tried to pull away. Loos told J.T.S. again not to scream and he was again submerged. This time, Loos had one hand under J.T.S. and one hand on his chest. At trial, Tetzlaff testified that Loos was "holding him under the water." T.L. similarly testified he saw Loos push J.T.S. under water, and T.L. could see J.T.S. flailing his arms while submerged. When Loos lifted him out of the water, he came up coughing and screaming.

Loos denied pushing or holding J.T.S. under the water and testified that she kept her hands on him to make sure she could feel if he took a breath, to ensure he did not inhale any water. She stated that because she is familiar with teaching young children to swim, she was aware that a child could stay under water for up to five seconds without trying to take a breath. When she pulled him out of the water and set him on his feet, Loos told J.T.S. he did "much better" and, on the

video, J.T.S. appeared to stop crying. This entire encounter took less than a minute.

Loos testified that the purpose of this exercise was to teach J.T.S. a technique she called "infant self-rescue" by teaching him to float on his back. She had read that the infant self-rescue technique was "one of the leading ways to prevent drowning." According to Loos, she told J.T.S. that if he screamed he would go under water, not because she would force him underwater but because she was trying to convey to him that, if he panicked, he would naturally submerge himself.

Teztlaff testified that Loos then took J.T.S. out of the river, told him to calm down, and set him down in shallow water at the water's edge. Teztlaff described J.T.S. as shivering and upset. When Tetzlaff went to comfort him, Loos told her not to "baby" him. According to Tetzlaff, Loos made J.T.S. sit at the shallow water for at least ten minutes while he cried quietly. T.L. testified J.T.S. looked sad, was whining and shivering, with blue lips and goose bumps on his arms.

Loos denied that she made J.T.S. sit in the water. She testified J.T.S. sat in the water playing with the rest of the kids and their toys.

At trial, the State called a Dr. Emily Brown to testify to the effects an incident like this could have on a non-verbal toddler. Dr. Brown testified that the physical risks associated with being submerged in water could include damage to the lungs or brain. However, she also testified that, to her knowledge, J.T.S. never suffered any such injuries.

- 4 -

J.T.S's parents testified that J.T.S. suffered no visible injury. While J.T.S.'s mother testified that the toddler had tubes in his ears and experienced a fever and ear infection after his trip to the river, she lost any medical records of the clinic visit she made for J.T.S. to get him evaluated. There was no evidence causally connecting Loos's conduct to this ear infection. J.T.S.'s father confirmed the child needed no medical treatment and neither he nor his wife took the child to be evaluated after learning of the incident in late June 2015. Tetzlaff agreed J.T.S. never lost consciousness and did not experience any vomiting. Tetzlaff's son similarly testified he saw no injuries.

On December 1, 2017, approximately two and a half years later, the State charged Loos with one count of assault of a child in the third degree. At the conclusion of the State's case-in-chief, and again at the conclusion of trial, Loos moved to dismiss the charge for insufficient evidence. The trial court denied this motion, although it acknowledged its decision was a "close call."

At the State's request, the court instructed the jury on the alternative offense of fourth degree assault. The jury did not reach a verdict on the charge of assault of a child, and instead convicted Loos of assault in the fourth degree.

ANALYSIS

Loos challenges her conviction for fourth degree assault as barred by the statute of limitations. She further argues the trial court erred by instructing the jury on fourth degree assault because it is neither a lesser-included nor an inferior degree offense of third degree assault of a child. Finally, she contends there was insufficient evidence to submit the third degree child assault charge to the jury.

While Loos failed to preserve the statute of limitations challenge in the trial court, we agree that the trial court erred in concluding it was an inferior degree offense to the criminal negligence prong of third degree assault with which Loos was charged. And we further conclude the State failed to present sufficient evidence that Loos's actions caused J.T.S. substantial pain that extended for a period of time sufficient to cause considerable suffering.

A.      Statute of Limitations for Fourth Degree Assault

Loos was charged with the felony of assault of a child in the third degree under RCW 9A.36.140, based on the June 15, 2015, incident. This crime has a three year statute of limitations. RCW 9A.04.080(1)(i). There is no dispute the State brought this charge in a timely manner.

At the conclusion of trial, the State requested an instruction on the alternative charge of fourth degree assault. Assault in the fourth degree has a two year statute of limitations. RCW 9A.04.080(1)(j). While the original charge was timely, the State would have been barred by the statute of limitations from prosecuting Loos for fourth degree assault.

The State contends Loos did not raise the statute of limitations below and failed to preserve that issue for appeal. Loos maintains she can raise the issue for the first time on appeal under RAP 2.5(a)(1). Under RAP 2.5(a), this court may refuse to review any claim of error not raised in the trial court. RAP 2.5(a)(1) provides that a party may raise the lack of a trial court's jurisdiction for the first time on appeal. But a statute of limitations is not jurisdictional in nature. State v. Peltier, 181 Wn.2d 290, 296, 332 P.3d 457 (2014) (statute of limitations does not take

away fundamental right of superior court to hear controversy; it merely limits the time in which court can exercise that authority). Thus, the statute of limitations challenge is not reviewable under RAP 2.5(a)(1).

Alternatively, Loos argues she preserved the error by objecting to the trial court's decision to instruct the jury on fourth degree assault. CrR 6.15(c) provides that a party objecting to an instruction "shall state the reasons for the objection, specifying the number, paragraph, and particular part of the instruction to be given or refused." The rule requires timely and well-stated objections "in order that the trial court may have the opportunity to correct any error." State v. Scott, 110 Wn.2d 682, 686, 757 P.2d 492 (1988) (quoting Seattle v. Rainwater, 86 Wn.2d 567, 571, 546 P.2d 450 (1976)). A failure to object to an instruction waives the issue on appeal. State v. O'Brien, 164 Wn. App. 924, 932, 267 P.3d 422 (2011). If a defendant raises one objection to an instruction at the trial level, but then challenges an instruction on different legal grounds for the first time on appeal, this court will not consider the new argument. State v. Garvin, 28 Wn. App. 82, 84, 621 P.2d 215 (1980).

Here, Loos did object to the fourth degree assault instruction but based the objection on the fact that this crime had a greater mens rea than the crime with which Loos had been charged. She did not object on statute of limitations grounds. Her objection was thus not specific enough to give the trial court the opportunity to evaluate whether the charge was time-barred. We conclude she did not adequately preserve the error for appeal under CrR 6.15(c).

Finally, citing Peltier, 181 Wn.2d at 297, Loos maintains a defendant cannot waive a criminal statute of limitations unless she does so expressly and no express waiver of the statute of limitations occurred here. This argument conflates the concept of waiving an error by failing to preserve it for appeal and waiving a defense to a criminal charge.

In Peltier, the Supreme Court held that a defendant may expressly waive a statute of limitations in a criminal case as a part of plea negotiations. 181 Wn.2d at 298. In a later case, In re Pers. Restraint of Swagerty, 186 Wn.2d 801, 810, 383 P.3d 454 (2016), the Supreme Court held that as long as the statute of limitations has not yet run on the original criminal charge, a "defendant may knowingly and expressly waive an expired statute of limitations on lesser charges to take advantage of a beneficial plea offer." And "[t]he defendant may execute this waiver after consulting with counsel as part of plea negotiations." Id.

Neither Peltier nor Swagerty apply here. Due process requires that a guilty plea be knowing, voluntary, and intelligent. In re Pers. Restraint of Isadore, 151 Wn.2d 294, 297, 88 P.3d 390 (2004). Under CrR 4.2(d), the trial court cannot accept a guilty plea unless it determines the defendant has entered into it voluntarily and with an understanding of the nature of the charge and consequences of the plea. The holdings in both Peltier and Swagerty, requiring the explicit waiver of a statute of limitations defense in the context of plea negotiations, are consistent with due process and CrR 4.2(d).

The State does not contend that Loos waived the statute of limitations defense as a part of plea negotiations. It argues, instead, that she waived the right

to raise the statute of limitations before this court by not raising that issue below. Loos has cited no authority for the proposition that the procedural protections applicable to waivers of rights in guilty pleas apply in the context of the preservation of errors for an appeal. When a party provides no citation to support an argument, this court will assume that counsel, after diligent search, has found none. State v. Arredondo, 188 Wn.2d 244, 262, 394 P.3d 348 (2017).

We conclude a defendant can waive a statute of limitations defense by failing to raise it in the trial court and an express waiver is not required. Because Loos did not raise the statute of limitations below, she is precluded from raising the argument for the first time on appeal.

B.    Inferior Degree Offense Jury Instruction

Loos next argues the trial court erred in giving the jury instruction for fourth degree assault because it is neither a lesser included offense nor an inferior degree offense to assault of a child in the third degree. The State concedes that fourth degree assault is not a lesser-included offense[1] but argues that the trial court correctly concluded it is an inferior degree offense. We conclude the trial court erred under the circumstances of this case in instructing the jury on fourth degree assault because Loos was charged with causing bodily harm through criminal negligence, not with engaging in an intentional assault. Intentional assault is not

---

[1] The trial court correctly concluded fourth degree assault is not a lesser included offense to third degree assault of a child. It is possible to commit assault in the third degree by criminal negligence without committing fourth degree assault. See State v. Sample, 52 Wn. App. 52, 54, 757 P.2d 539 (1988) (comparing third degree assault with simple assault, which was later recodified as fourth degree assault). Because it is possible to commit the greater offense without committing the lesser, fourth degree assault is not a lesser included offense.

an inferior degree offense to negligent assault because the two crimes address significantly different conduct.

Generally, a criminal defendant is entitled to notice of the charge they are to meet at trial and may only be convicted of those crimes charged in the State's information.  State v. Tamalini, 134 Wn.2d 725, 731, 953 P.2d 450 (1998).  However, where the defendant is charged with an offense that consists of different degrees, the jury may find that defendant guilty of an inferior degree of the charged offense.  RCW 10.61.003.  A trial court may instruct the jury on an inferior degree offense when:

> (1) the statutes for both the charged offense and the proposed inferior degree offense 'proscribe but one offense'; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense.

State v. Fernandez-Medina, 141 Wn.2d 448, 454, 6 P.3d 1150 (2000) (quoting State v. Peterson, 133 Wn.2d 885, 891, 948 P.2d 381 (1997)).

The standard of review applied to a trial court's decision to give a jury instruction depends on whether that decision was based on an issue of law or fact.  State v. Walker, 136 Wn.2d 767, 771, 966 P.2d 883 (1998).  Because the first two prongs of the Fernandez-Medina test are legal questions, we review them de novo.  Id. at 772.  The third prong presents a question of fact and is reviewable only for abuse of discretion.  Id. at 771-72.  Only the first two prongs of Fernandez-Medina are at issue here; our review is thus de novo.

In deciding whether criminal statutes "proscribe one offense," our Supreme Court has examined whether they criminalize the same or different conduct.

Tamalini, 134 Wn.2d at 733.  In Tamalini, the defendant sought jury instructions for first and second degree manslaughter, arguing they were inferior degree offenses of second degree felony murder.  Tamalini, 134 Wn.2d at 730.  The court rejected this contention because "the manslaughter statutes and the felony murder statutes proscribe significantly different conduct and thus define separate and distinct crimes."  Id. at 732.  The court examined the statutory elements of manslaughter and felony murder, adopted this court's reasoning in State v. McJimpson, 79 Wn. App. 164, 901 P.2d 354 (1995), and determined that, although both statutes proscribe killing another human being generally, they are "directed to significantly differing conduct of defendants."  Tamalini, 134 Wn.2d at 733.  In McJimpson, this court held that killing someone while committing a felony is a crime distinct from the crime of killing someone through criminal negligence because "they prohibit significantly different conduct with regard to such killing." 79 Wn. App. at 172.

McJimpson examined the conduct criminalized under the felony murder statute (killing a person while committing a felony) and the manslaughter statute (through criminal negligence causing someone's death) and concluded that the crimes were "separate and distinct" because the conduct that formed the basis for each crime was so different.  79 Wn. App. at 172.  Loos was charged under RCW 9A.36.140 which provides:

> (1) A person eighteen years of age or older is guilty of the crime of assault of a child in the third degree if the child is under the age of thirteen and the person commits the crime of assault in the third degree as defined in RCW 9A.36.031(1)(d) or (f) against the child.

The State relied on RCW 9A.36.031(1)(f) which provides:

- 11 -

(1)  A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:

. . .

(f) With criminal negligence, causes bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering . . . .

Under RCW 9A.36.041(1), a person is guilty of assault in the fourth degree "if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another."  Assault is undefined in the criminal code, and courts apply the common law definition.  State v. Walden, 67 Wn. App. 891, 894, 841 P.2d 81 (1992).  The jury was instructed on this definition as applied to this case:

In regards to the lesser crime of Assault in the Fourth Degree, an assault is an intentional touching of another person that is harmful or offensive, regardless of whether any physical injury is done to the person.  A touching is offensive if the touching would offend an ordinary person who is not unduly sensitive.

In regards to the lesser crime of Assault in the Fourth Degree, an assault is also an act, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intent to inflict bodily injury.

As in McJimpson, a comparison of the conduct covered by each criminal statute supports a conclusion that the two crimes do not proscribe the same conduct.  The conduct at issue in the applicable provision of the third degree assault statute is acting in a negligent manner that causes bodily harm.  Conversely, the conduct at issue under the fourth degree assault statute is acting with the intent to cause harmful contact with another or acting with the intent to cause reasonable fear of bodily injury in another.  There is an actual intent to achieve a certain result.

- 12 -

One need not touch another (fourth degree assault) to cause, through one's negligence, bodily harm (third degree assault). And one can intend to instill in another the apprehension of bodily injury (fourth degree assault) without actually causing bodily harm or substantial pain (third degree assault). Indeed, a defendant can be guilty of fourth degree assault "regardless of whether any physical injury is done." The analysis of the conduct that forms the basis of these two crimes supports a conclusion that fourth degree assault does not proscribe the same conduct as third degree assault of a child.

The mens rea of each crime is different, which in and of itself is not unusual, but what makes this case distinguishable from the cases on which the State relies is that the higher degree crime, third degree assault of a child, has a lower mens rea than fourth degree assault. RCW 9A.08.010 defines four levels of culpability applicable to the Washington criminal code: intent, knowledge, recklessness, and criminal negligence. The statutory scheme creates a hierarchy of mental states for crimes of <u>increasing</u> culpability. <u>State v. Shipp</u>, 93 Wn.2d 510, 515, 610 P.2d 1322 (1980) (emphasis added).

The mens rea for criminal negligence is set out in RCW 9A.08.010(1)(d):

A person is criminally negligent or acts with criminal negligence when he or she fails to be aware of a substantial risk that a wrongful act may occur and his or her failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in the same situation.

But fourth degree assault, unlike negligent assault, is a specific intent crime. <u>Walden</u>, 67 Wn. App. at 894. Whether one assaults another through offensive touching or through creating an apprehension and fear of bodily injury, the

- 13 -

defendant must act with the intent to accomplish these results. The mens rea is thus intent under RCW 9A.08.010(1)(a). Proof of a higher mental state necessarily proves a lower mental state. RCW 9A.08.010(2). However, the converse is not true.

Relying on State v. Foster, 91 Wn.2d 466, 589 P.2d 789 (1979), the State contends that fourth degree assault is an inferior offense to third degree assault of a child because both proscribe the single offense of assault. In that case, Foster was charged with shooting his victim with the intent to kill him. Id. at 469. At trial, the State proceeded on a theory of intentional assault and Foster claimed he acted in self-defense. Id. at 470. The trial court instructed the jury on both first degree intentional assault with a deadly weapon under former RCW 9A.36.010(1)(a),[2] and second degree negligent assault with a weapon under former RCW 9A.36.020(1)(e).[3] The Supreme Court concluded that second degree negligent assault is an inferior degree offense of first degree intentional assault because the statutes proscribe "but one offense that of assault." Id. at 472.

Foster is clearly distinguishable because the mens rea of criminal negligence is undoubtedly an inferior degree of culpability than intent under RCW 9A.08.010(1). While Foster supports the proposition that negligent assault is an

---

[2] Under former RCW 9A.36.010(1)(a) (1976), a person was guilty of assault in the first degree if "with the intent to kill a human being," he "assaults another with a firearm or any deadly weapon or by any force or means likely to produce death."

[3] RCW 9A.36.020(1)(e) (1976) provided:
> (1) Every person who, under circumstances not amounting to assault in the first degree shall be guilty of assault in the second degree when he:
> > (e) With criminal negligence, shall cause physical injury to another person by means of a weapon or other instrument or thing likely to produce bodily harm.

inferior degree offense to intentional assault, it does not support the proposition that intentional assault is an inferior degree offense to negligent assault.

And in Tamalini, the Supreme Court rejected the argument that manslaughter was an inferior degree offense to felony murder simply because they both were included in the statutory definition of "homicide" in the penal code. 134 Wn.2d at 734-35. "[T]he location of a statute in the criminal code is not determinative of whether a certain crime is an inferior degree offense of another crime." Id. at 735 (citing McJimpson, 79 Wn. App. at 172). As McJimpson noted, in the chapter entitled "assault—physical harm," RCW 9A.36, the legislature included the crimes of reckless endangerment and promoting a suicide attempt, neither of which are inferior degrees of assault. 79 Wn. App. at 172. RCW 9A.36.031(1)(f), although entitled "assault in the third degree" does not include, as an element of the offense, any assault at all.

There is no support for the proposition that all offenses denominated as "assault" in the penal code proscribe the same conduct as required by Tamalini and Fernandez-Medina. We conclude that fourth degree intentional assault is not an inferior degree offense to third degree assault of a child when it is based on criminal negligence under RCW 9A.36.031(f) because the two crimes do not proscribe the same conduct.

The State sought the fourth degree assault instruction after it had rested its case. Under art. 1, § 22, the State cannot amend an information once it rests its case unless the amendment is to a lesser degree of the same charge or a lesser included offense. State v. Pelkey, 109 Wn.2d 484, 491, 745 P.2d 854 (1987).

Because fourth degree assault is neither a lesser degree offense nor a lesser included offense to third degree assault of a child, the trial court erred in instructing the jury on assault in the fourth degree.

C.     Sufficiency of Evidence of Bodily Harm, Accompanying Substantial Pain and Considerable Suffering.

Finally, Loos contends the trial court erred in denying her motion to dismiss the third degree assault of a child charge because the evidence was insufficient to demonstrate that J.T.S. suffered substantial pain and considerable suffering. We agree.

Due process of law requires that the State prove every element of a charged crime beyond a reasonable doubt in order to obtain a criminal conviction. State v. O'Hara, 167 Wn.2d 91, 105, 217 P.3d 756 (2009). Because the sufficiency of the evidence is a question of constitutional law, we review this issue de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).

To evaluate whether sufficient evidence supports a conviction, this court views the evidence in the "light most favorable" to the State to determine if "any rational trier of fact could have found the essential elements" of the charged crime beyond a reasonable doubt. State v. Green, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). A defendant's claim of insufficiency "admits the truth of the State's evidence and all inferences that reasonably can be drawn" from it. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We consider circumstantial and direct evidence equally reliable. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We also defer to the jury's evaluation of witness credibility, resolution of testimony in conflict, and weight and persuasiveness of the evidence. State v.

- 16 -

Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). Dismissal with prejudice is required when there is insufficient evidence at the close of the prosecution's case-in-chief to sustain a charged offense. State v. Devitt, 152 Wn. App. 907, 913, 218 P.3d 647 (2009).

The State chose to charge Loos with third degree assault of a child under RCW 9A.36.140. This decision imposed on the State the obligation to prove beyond a reasonable doubt that Loos negligently caused "bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering" to a person under the age of 13. RCW 9A.36.140; RCW 9A.36.031(1)(f).

RCW 9A.04.110(4)(a) defines "bodily harm" as "physical pain or injury, illness, or an impairment of physical condition[.]" And this pain or impairment must be accompanied by "substantial pain." Although the statute does not define "substantial pain," in State v. McKague, 172 Wn.2d 802, 262 P.3d 1225 (2011), the Supreme Court held the word "substantial" as used in RCW 9A.36.021(1)(a) "signifies a degree of harm that is considerable and necessarily requires a showing greater than an injury merely having some existence." Id. at 806. It approved the dictionary definition meaning "considerable in amount, value, or worth." Id. We see no reason to adopt any different meaning of "substantial" as used in RCW 9A.36.031(1)(f). And the legislature, by requiring that the pain must last long enough to cause "considerable suffering," clearly indicated a durational requirement. The State must demonstrate that the amount of pain the victim

experienced was considerable and the pain the victim experienced lasted for a significant period of time.

This interpretation of RCW 9A.36.031(1)(f) is consistent with this court's past cases in which we have concluded, for example, that evidence of substantial pain and considerable suffering was sufficient where the State proved that the victim suffered a headache that lasted more than two weeks, extensive bruising, and a black eye. State v. Robertson, 88 Wn. App. 836, 841, 947 P.2d 765 (1997).

Viewing the evidence in the light most favorable to the State, the eye witnesses' testimony, combined with the State's expert's testimony, was sufficient to establish that J.T.S.'s coughing when pulled out of the water caused him some physical pain. Dr. Brown testified that the coughing probably indicated he had gotten some amount of water in his airway. But neither the testimony nor the 51-second video of the incident supports any contention that J.T.S. was unable to quickly and easily eliminate the water from his throat or that he remained in any pain once he did so. The evidence was undisputed at trial that J.T.S. did not require CPR, did not vomit, did not lose consciousness, did not appear to have any swelling of his belly, did not sustain any lung injury, and needed no medical treatment. There is no evidence J.T.S. was inconsolable as a result of any ongoing pain or that any momentary pain he may have experienced lasted for any period of time after he coughed and Loos removed him from the water.

J.T.S.'s mother testified that J.T.S. developed a fever and an ear infection a couple of weeks afterward. But the State presented no evidence from which the

jury could infer that J.T.S.'s fever or ear infection was in any way causally connected to the river incident.

The State also presented evidence that two months after the incident, J.T.S. became agitated when visiting a relative and his mother tried to encourage J.T.S. to swim in the relative's pool. While this event may suggest Loos's swimming lesson caused J.T.S. to fear water, it in no way suggests J.T.S. sustained any on-going physical injury. In State v. Saunders, this court concluded that the statute at issue here "proscribes the infliction of bodily harm, not the infliction of emotional pain." 132 Wn. App. 592, 599, 132 P.3d 743 (2006). Any psychological injury Loos may have inflicted on J.T.S. is not the type of conduct RCW 9A.36.031(1)(f) criminalizes.

Any suggestion that J.T.S.'s fear of water has its roots in his recollection of physical pain he endured during his 51-second swimming lesson is too speculative to be persuasive. "Inferences based on circumstantial evidence must be reasonable and cannot be based on speculation." State v. Vasquez, 178 Wn.2d 1, 16, 309 P.3d 318 (2013). Without evidence that J.T.S. actually endured considerable physical pain, such an argument is pure speculation.

No reasonable jury could conclude that J.T.S. suffered substantial pain that extended for a period sufficient to cause considerable suffering. The State therefore failed to present sufficient evidence to establish that Loos committed third degree assault of a child.[4] The trial court erred in denying Loos's motion to dismiss this charge at the conclusion of the State's case-in-chief.

---

[4] Because we reverse Loos's conviction, we need not address Loos's final argument regarding legal financial obligations.

We reverse Loos's conviction for assault in the fourth degree and remand to the trial court to vacate that judgment.

_Andrus, A.C.J._

WE CONCUR:

_Brennan, J._ _Chun, J._