IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 83729-0-I |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| STEPHEN M KEA, | |
| Appellant. | |

BOWMAN, J. — A jury convicted Stephen Kea of domestic violence (DV) third degree assault of a child. Kea appeals, arguing that insufficient evidence supports finding he caused "substantial pain" and "considerable suffering" to his son and that the trial court violated his fundamental right to parent by ordering no contact with his son for five years. We affirm Kea's conviction but remand for the trial court to reconsider the no-contact order (NCO).

FACTS

Kea's three sons live with his ex-wife, Stephanie Ndambo. Kea and Ndambo share custody, and the kids stay with Kea on alternate weekends. Over Easter weekend 2019, nine-year-old F.K and his brothers stayed with Kea. On Saturday, April 20, F.K. misbehaved, so Kea took his son into a bedroom and repeatedly hit him with a belt on his bare bottom. Kea's older brother heard F.K. "screaming" from the other room. Bruises formed on F.K.'s bottom one to two hours after the beating.

The next day, Kea met Ndambo at Chuck E. Cheese to exchange the kids. F.K. told his mother that "his butt hurt and he had a bruise on his butt, but he wanted to . . . talk about it later." When Ndambo and her sons returned home, F.K. showed her the bruises. Ndambo took pictures of the bruises and called 911. She then drove F.K. to a Seattle police station and reported the injuries. On Friday, April 26, Ndambo took F.K. to the doctor. Pediatric nurse practitioner Michelle Breland noted bruising on F.K.'s buttocks that extended to the sides of his hips and down to his upper thighs.

On July 8, 2019, the State charged Kea with two counts of DV third degree assault of a child. The State later dismissed the second count. The case proceeded to a jury trial.

At trial, F.K. testified that Kea hit him 12 times on his bare bottom with a belt. F.K. said that the beating left bruising, which made it painful to sit for the next week. Breland testified that F.K.'s bruising was "extensive" and required "significant force with multiple impacts." Kea testified in his own defense, admitting that he hit F.K. with a belt in a bedroom after F.K. misbehaved. He also explained that he used a belt because that is how his parents disciplined him as a child.

The jury convicted Kea as charged. At sentencing, the court imposed a first time offender waiver. It ordered 12 months of community custody and no contact with F.K. for five years.

Kea appeals.

ANALYSIS

Kea argues that insufficient evidence supports his assault conviction and that the court erred by imposing the DV NCO.

Sufficiency of the Evidence

Kea argues that insufficient evidence supports his assault conviction because the State failed to prove the alternative means that he caused substantial pain that extended for a period sufficient to cause considerable suffering. We disagree.

Article I, section 21 of the Washington Constitution guarantees criminal defendants the right to a unanimous jury verdict. State v. Ortega-Martinez, 124 Wn.2d 702, 707, 881 P.2d 231 (1994). This may also include the right to express jury unanimity on the means by which the defendant committed the crime. Id. But when there is sufficient evidence to support each of the alternative means of committing a crime, express jury unanimity as to a particular means is not required. State v. Owens, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014). Evidence is sufficient if, viewed in a light most favorable to the State, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Owens, 180 Wn.2d at 99.

Assault in the third degree is an alternative means crime. RCW 9A.36.031(1)(a)-(k). Here, the State charged Kea under two of the means— RCW 9A.36.031(1)(d) and (f). As a result, the court instructed the jury:

> To convict the Defendant of the crime of Assault of a Child in the Third Degree, each of the following elements must be proved beyond a reasonable doubt:
> . . . .

(2) That, with criminal negligence:
(a) the Defendant caused bodily harm by means of a weapon or other instrument or thing likely to produce bodily harm to [F.K.]; or
(b) the Defendant caused bodily harm accompanied by substantial pain that extended for a period sufficient to cause considerable suffering to [F.K.].

Kea concedes that sufficient evidence supports the jury finding that he caused "bodily harm by means of a weapon or other instrument." But Kea argues that insufficient evidence supports that he caused F.K. bodily harm accompanied by substantial pain that extended for a period sufficient to cause considerable suffering.

The court instructed the jury that "bodily harm" is "physical pain or injury, illness, or an impairment of physical condition."[1] While the trial court did not define "substantial pain," our Supreme Court has held the word "substantial" in the context of an assault charge "signifies a degree of harm that is considerable and necessarily requires a showing greater than an injury merely having some existence." State v. McKague, 172 Wn.2d 802, 806, 262 P.3d 1225 (2011) (approving the dictionary definition of "substantial" as " 'considerable in amount, value, or worth' ") (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2280 (2002)). And by requiring that the pain must last long enough to cause considerable suffering, the legislature "clearly indicated a durational requirement." State v. Loos, 14 Wn. App. 2d 748, 766, 473 P.3d 1229 (2020). As a result, the State "must demonstrate that the amount of pain the victim

---

[1] See also RCW 9A.04.110(4)(a).

4

experienced was considerable and [that] the pain the victim experienced lasted for a significant period of time." Id.

Kea argues that this case is like Loos. In that case, Loos was the 2-1/2-year-old victim's babysitter. Loos, 14 Wn. App. 2d at 752-53. At trial, the State presented the jury with a 51-second video that showed Loos

> holding [the victim] on his back in the water, and is heard telling him[,] "[W]hen we scream, we go under." After a moment, [the victim] was submerged in the water for a few seconds and Loos pulled him back up out of the water. Loos repositioned [the victim] on his back, at which point he began to struggle and tried to pull away. Loos told [the victim] again not to scream and he was again submerged. This time, Loos had one hand under [the victim] and one hand on his chest.

Id. at 753-54.[2] Loos testified that she was trying to teach the victim a technique called " 'infant self-rescue' " by teaching him to float on his back. Id. at 754. The victim had no visible injuries, did not receive medical treatment, and never lost consciousness or vomited. Id. at 755. The State charged Loos with third degree assault of a child. Id.

On appeal, Loos argued that the trial court should have dismissed the charge because the evidence was insufficient to prove she inflicted substantial pain and considerable suffering. Loos, 14 Wn. App. 2d at 765. We agreed. Id. at 768. We reasoned that while the victim experienced some physical pain from coughing after being pulled out of the water, the pain was short lasting. Id. at 767. And we noted that the victim "did not require CPR (cardiopulmonary resuscitation), did not vomit, did not lose consciousness, did not appear to have

---

[2] Third alteration in original.

any swelling of his belly, did not sustain any lung injury, and needed no medical treatment." Id.

This case is different than Loos. Here, nurse practitioner Breland testified that the tissue in the buttocks is difficult to bruise and described F.K.'s bruising five days after the assault as "extensive," requiring "significant force with multiple impacts." Pictures admitted at trial showed widespread bruising across F.K.'s buttocks and thighs. And F.K.'s mother said the bruising was visible for about "a month." Finally, F.K. testified that the spanking hurt and that it continued to "hurt[ ] a lot" over the next week, making it difficult to sit. Viewed in a light most favorable to the State, the evidence supports the jury finding that F.K. experienced substantial pain for a duration sufficient to cause considerable suffering. See, e.g., State v. Saunders, 132 Wn. App. 592, 600, 132 P.3d 743 (2006) (the victim suffered substantial pain and considerable suffering with "neck pain lasting for more than three hours, . . . swelling on her cheek and an abrasion on her forehead"); State v. Fry, 153 Wn. App. 235, 240-41, 220 P.3d 1245 (2009) (the victim suffered substantial pain and considerable suffering with a "swollen face and right eye" that caused pain "throughout the morning").

DV NCO

Kea argues that the trial court erred by issuing a five-year NCO prohibiting him from any contact with F.K. He contends that the NCO violates his fundamental right to parent. We agree.

At sentencing, a trial court may impose crime-related prohibitions that prohibit conduct directly related to "the circumstances of the crime for which the

6

offender has been convicted." RCW 9.94A.505(9), .030(10); State v. Torres, 198 Wn. App. 685, 689, 393 P.3d 894 (2017). In general, we review crime-related prohibitions for an abuse of discretion. In re Pers. Restraint of Rainey, 168 Wn.2d 367, 374, 229 P.3d 686 (2010). "But we more carefully review conditions that interfere with a fundamental constitutional right." Id.

Parents have a fundamental interest in the care, custody, and control of their children. State v. Ancira, 107 Wn. App. 650, 653-54, 27 P.3d 1246 (2001). But the State also has a compelling interest in protecting children from physical or mental harm. Id. at 653-54. So, a sentencing court can restrict the fundamental right to parent, but only if it is reasonably necessary to prevent harm to a child. Id. at 654. Before imposing an NCO that impacts a person's right to parent, the court must address whether the condition is reasonably necessary to further the State's interest in keeping the child from harm and narrowly tailor the order in both scope and duration. Torres, 198 Wn. App. at 690. This includes considering less restrictive alternatives. Id. The trial court must conduct this inquiry on the record. State v. DeLeon, 11 Wn. App. 2d 837, 840-41, 456 P.3d 405 (2020).

Here, when the trial court imposed the five-year NCO, it stated:

> The Court is going to require at this point the defendant have no contact with [F.K.].
> I would — I think [F.K.] should have some role in deciding whether or not he wishes to see his father and how much he wishes to [see] his father, and that's something that the Court can address in the future once the parenting classes are complete. I don't have the authority to order no contact with the other children.

The court did not explain why the five-year prohibition on any contact was reasonably necessary to further the State's interests in protecting F.K. Nor did the court discuss less restrictive alternatives to a full NCO. While the trial court noted that it would reconsider the NCO if Kea completed parenting classes, no language in the judgment and sentence reflects the trial court's assurance. Because the trial court did not impose the five-year NCO using the analysis required by case law, we remand for reconsideration of the order, applying the appropriate analysis. See Torres, 198 Wn. App. at 690 (remanding for reconsideration of an NCO between parent and child where the trial court's decision to impose the order "was not guided by the analysis required by our case law").

We affirm Kea's conviction but remand for the trial court to reconsider the five-year NCO.

_____
Bruman, J

WE CONCUR:

_____        _____
Coburn, J.                              Dwyer, J.

8