IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LEONARD "ERIC" OLSON, as Executor of the Estate of GARY D. OLSON, | No. 85398-8-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| AIR & LIQUID SYSTEMS CORP., successor-by-merger to BUFFALO PUMPS, INC.,† | |
| Defendants, | |
| JOY GLOBAL SURFACE MINING, INC., f/k/a P&H MINING EQUIPMENT, INC., | |
| Respondent. | |

SMITH, C.J. — Gary Olson worked as a maintenance mechanic from 1970 to 1979 at Intalco, an aluminum smelter facility, where he was exposed to asbestos and asbestos-containing products. In 2021, after Olson passed away from mesothelioma due to asbestos exposure, Olson's children sued over 80 companies, claiming strict products liability and negligence and alleging that the companies failed to provide adequate warnings of the dangers of asbestos. After a jury trial on Olson's claims against Joy Global Surface Mining, Inc., the jury returned verdicts in favor of Joy Global on all causes of action alleged. On appeal, Olson contends that the court erred by failing to instruct the jury that Joy

---

† See Appendix for a list of all Defendants.

Global had an ongoing duty to warn users of its products. Because the jury instructions reflected the applicable law and because Olson was able to argue his case from those instructions, we affirm.

FACTS

Joy Global Surface Mining, Inc., formerly known as P&H Mining Equipment, Inc., (P&H), designed and manufactured large overhead cranes for use in aluminum manufacturing facilities. Up until the mid-1980s, the brakes on P&H's cranes used asbestos-containing components.

In 1971, the Occupational Health and Safety Administration (OSHA) released guidelines on asbestos exposure limits.[1] Around the same time, P&H became aware that asbestos was a hazard. Despite knowing that its cranes contained hazardous materials, P&H did not provide warnings to its customers and did not update its service manuals to include warnings.

From 1970 to 1979, Gary Olson worked as a maintenance mechanic at Intalco, an aluminum smelter facility, in Ferndale, Washington. The facility housed several large overhead cranes that were manufactured by P&H. As a maintenance mechanic, Olson spent significant time inspecting and repairing the overhead cranes, including changing the brakes. This work exposed Olson to significant levels of asbestos and in early 2020, he was diagnosed with mesothelioma. He passed away a few months after his diagnosis in October 2020.

---

[1] As part of the guidelines, OSHA prohibited the use of compressed air for cleaning in 1972. But OSHA did not prohibit the use of compressed air with respect to changing asbestos-containing brakes until 1994.

In January 2021, Olson's children sued over 80 defendants, including P&H, for product liability, negligence, negligent representation, and false representation.[2]

Trial against P&H on Olson's product liability and negligence claims began in March 2023. Although Olson passed away before he could be deposed, he submitted an affidavit before passing that detailed his job duties at Intalco. In the affidavit, Olson described his primary work to be servicing cranes in the potline area, replacing brake shoes, and repairing mechanical systems. Several of Olson's former coworkers testified live or by deposition that Olson's work as a maintenance mechanic involved frequently changing the brakes on the cranes in the cast house.[3]

Olson's industrial hygiene expert, Dr. Michael Ellenbecker, also testified that the work described by Olson and his coworkers exposed Olson to high levels of airborne asbestos. Olson's occupational medicine expert, Dr. Richard Cohen, testified that Olson experienced significant exposure to P&H's asbestos products and that this exposure was a significant factor in causing Olson to develop mesothelioma.

Later, during discussions regarding jury instructions, Olson requested that the court give the jury his proposed instruction that manufacturers have an ongoing duty to warn of hazards after the time of sale. Olson also requested that

---

[2] Olson's children also brought a claim against Metropolitan Life Insurance Company for aiding and abetting battery.

[3] A cast house is where aluminum is made.

the court include Washington Pattern Instruction 110.03.01 on ongoing duty to warn. Olson objected to the court's denial of the requests.

The jury returned a verdict for P&H.[4] Olson appeals.

ANALYSIS

On appeal, Olson contends that the trial court erred by refusing to instruct the jury that P&H had an ongoing, post-sale duty to warn under the law of negligence. Because Olson's proposed instruction was an inaccurate statement of law and because the jury instructions given permitted Olson to argue his theory of the case, we disagree.

Standard of Review

As an initial matter, we note that the parties disagree as to the appropriate standard of review. Olson maintains that the standard of review is de novo because whether a duty exists is a question of law. P&H counters that the correct standard of review for a court's refusal to give a jury instruction is abuse of discretion. We agree with Olson.

"The standard of review applied to a trial court's decision to give a jury instruction depends on whether that decision was based on an issue of law or fact." State v. Loos, 14 Wn. App. 2d 748, 760, 473 P.3d 1229 (2020). Where the court's refusal to give a requested instruction is based on a ruling of law, our review is de novo. State v. Arbogast, 199 Wn.2d 356, 365, 506 P.3d 1238 (2022). Because existence of a duty is a question of law, our review here is de

---

[4] Neither party designated the jury's verdict forms as part of the record on appeal.

novo.  Crisostomo Vargas v. Inland Wash., LLC, 194 Wn.2d 720, 730, 452 P.3d 1205 (2019).

Jury Instructions on Duty to Warn

Where, as here, substantially all of the injury-producing events occurred before 1981, the Washington Product Liability Act, chapter 7.72 RCW, does not apply and we apply common law product liability and negligence law.  Macias v. Saberhagen Holdings, Inc., 175 Wn.2d 402, 408, 282 P.3d 1069 (2012).

Jury instructions are sufficient if they (1) are supported by the evidence, (2) allow the parties to argue their theories of the case, and (3) properly inform the jury of the applicable law when read as a whole.  Needham v. Dreyer, 11 Wn. App. 2d 479, 487, 454 P.3d 136 (2019).  The relevant inquiry here is whether the jury instructions were sufficient for Olson to argue his theory of the case in order to prove the elements of negligence: (1) existence of a duty to the plaintiff, (2) breach of the duty, and (3) injury to the plaintiff proximately caused by the breach.  Hertog v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999).

1.  Olson's Proposed Instruction

Here, Olson requested that the court give the following proposed instruction concerning a manufacturer's ongoing duty to warn:

> When a product seller becomes aware or should have become aware of dangerous aspects of its product, it has an ongoing duty to warn of such dangerous aspects even though the dangerous aspects are discovered after the product has left its hands.  The duty to warn potential users exists even though such dangerous aspect was not known or foreseeable when the product was initially marketed.
>
> The duty to warn attaches, not when scientific certainty of harm is established, but whenever a reasonable person using the

5

product would want to be informed of the risk of harm in order to decide whether to expose himself or herself to it.

Our Supreme Court rejected this language in Young v. Key Pharmaceuticals, Inc., explaining that the language contained in the last paragraph of Olson's proposed instruction "is an incorrect statement of the law with regard to negligence actions." 130 Wn.2d 160, 178, 922 P.2d 59 (1996). Because Olson's proposed instruction did not accurately state the law, the court did not err in refusing to give the proposed instruction.

2. Failure to Give Ongoing Duty to Warn Instruction

In refusing to give Olson's proposed instruction, the court also declined to give an instruction on a manufacturer's ongoing duty to warn. Despite this, the remaining jury instructions, when read as a whole, permitted Olson to argue his theory of the case.

Instruction 14 summarized Olson's claims to the jury and outlined Olson's theories as to strict liability and negligence. Regarding the negligence claim, instruction 14 stated that Olson contended P&H was negligent by "failing to warn users of the dangers of asbestos in its products." Instruction 14 did not provide any temporal limitations for when P&H's duty to warn attached. Instruction 18 provided that a product may not be "reasonably safe" if "adequate warnings or instructions were not provided with the product." This instruction also did not include a time at which P&H needed to warn users of its products.

Instruction 20 outlined the elements of negligence. Regarding duty, Instruction 20 stated that Olson had the burden of proving "that Defendant acted, or failed to act, in one of the ways claimed by the Plaintiff and that in so acting, or

failing to act, Defendant was negligent." Instruction 21 defined negligence as "the failure to exercise ordinary care." It defined "ordinary care" as "the care that a reasonably careful person would exercise under the same or similar circumstances."

Instruction 22 addressed the scope of a manufacturer's duty to warn. It stated that in determining the scope of the duty, "a manufacturer is under a duty to use ordinary care to test, analyze, and inspect such products and is charged with knowing what such tests would have revealed." The instruction also stated that manufacturers have a "duty to use ordinary care to keep abreast of scientific knowledge, discoveries, and advances in the field." Instruction 23 stated that negligence was to "be judged in light of circumstances or knowledge existent at the time of the occurrence." The instruction explained that whether a manufacturer is negligent is "a question of what reasonable persons under the same or similar circumstances, and at the same or similar time, would or should have anticipated in the exercise of reasonable care." Finally, instruction 24 told the jurors that with respect to Olson's negligence claim, they could consider "what was generally known to the medical and scientific community about asbestos at the time of manufacture."

These instructions, when read together, permitted Olson to argue that P&H knew, or should have known, about the dangers of asbestos while Olson worked at Intalco and that P&H failed to exercise reasonable care by failing to warn users of its products. Because the instructions on negligence did not specify any time limit on when P&H's duty to warn attached, Olson could have

argued that P&H's duty to warn attached at any point in time. And although the court noted that it could not find "an express statement about this post-sale duty to warn," the court reasoned that such an instruction was "unnecessary" because Olson could "still argue [his] theory of the case without that instruction." Yet during closing argument, Olson failed to explain to the jury his theory that P&H had an ongoing duty to warn. Olson's failure to argue his theory of the case does not render the jury instructions insufficient. Because the court stated that Olson could still argue his theory of the case and the instructions given permitted him to do so, we conclude that the court's failure to give an ongoing duty to warn instruction was not error.

Affirmed.

_Smith, C.J._

WE CONCUR:

_Feldman, J._   _Coburn, J._

APPENDIX

LIST OF ALL DEFENDANTS

AIR & LIQUID SYSTEMS CORP., successor-by-merger to BUFFALO PUMPS, INC.; AJAX MAGNETHERMIC CORP.; ALDRICH PUMP LLC; AMERON INT'L CORP.; ANVIL CORP.; APPLIED INDUSTRIAL TECHNOLOGIES, INC.; ARKEMA INC.; ARMSTRONG INT'L, INC.; ATLAS COPCO COMPRESSORS LLC; AURORA PUMP CO.; BAKER PERKINS, INC.; BATTERY X-CHANGE & REPAIR, INC., individually and as successor to BLANCHARD AUTO ELECTRIC CO.; BEAZER EAST, INC., individually and as successor to KOPPERS CO., INC., and successor-in-interest to THEIM CORP. and UNIVERSAL REFRACTORIES CO.; BLACKMER PUMP CO.; BLANCHARD AUTO ELECTRIC CO.; BLUE M ELECTRIC CO.; BLYTHE MECHANICAL INC; BORGWARNER MORSE TEC LLC, as successor-by-merger to BORG-WARNER CORP.; BW/IP, INC.; C.H. MURPHY/CLARK-ULLMAN, INC.; CARRIER CORP.; CARVER PUMP CO.; CRANE CO.; CROWN CORK & SEAL CO., INC.; DUNKIN & BUSH, INC.; EATON HYDRAULICS LLC; EDERER, LLC, individually and as successor to EDERER, INC. and EDERER SERVICES, INC.; ELLIOTT CO. dba ELLIOTT TURBOMACHINERY CO.; ERSHIGS, INC.; FIVES NORTH AMERICAN COMBUSTION, INC.; FIVES SOLIOS CORP.; FLEET EQUIPMENT & ASSETS, LLC; FLEET EQUIPMENT SERVICE LLC; FLOWSERVE CORP., f/k/a THE DURIRON CASTINGS CO.; FLOWSERVE CORP., successor-in-interest to DURAMETALLIC CORP.; FLUOR CONSTRUCTORS INT'L, INC.; FLUOR CORP., individually and as successor-in-interest to FLUOR ENTER., INC.; FLUOR DANIEL ILLINOIS, INC.; FLUOR DANIEL SERVICES CORP.; FLUOR ENTER., INC.; FRYER-KNOWLES INC. a Washington corporation; GARDNER DENVER, INC.; GENERAL ELECTRIC CO.; GENERAL REFRACTORIES CO.; THE GOODYEAR TIRE & RUBBER CO., individually and as successor-in-interest to THE DURABLA MFG. CO.; GOULDS PUMPS, INC.; HARBISON-WALKER REFRACTORIES CO.; HASKELL CORP.; HENNESSY INDUSTRIES, INC.; HONEYWELL INT'L, INC., f/k/a HONEYWELL, INC.; HONEYWELL INT'L, INC., individually and as successor to ALLIEDSIGNAL, INC. and THE BENDIX CORP.; HOWDEN NORTH AMERICA INC., f/k/a HOWDEN BUFFALO CO., individually and as successor-in-interest to BUFFALO FORGE CO.; HUNTER FOUNDRY MACHINERY CORP.; HYSTERYALE GRP., INC., f/k/a NACCO MATERIALS HANDLING GRP., INC.; IMO INDUSTRIES INC., individually and as successor-in-interest to DELA VAL TURBINE, INC.; IMPERO CONST. CO.; INDUCTOTHERM CORP.; INGERSOLL-RAND CO.;ITT CORP.; J.R. CLARKSON CO., LLC, individually and as successor to THE KUNKLE VALVE CO.; KOMATSU AMERICA CORP.; LINDBERG/MPH; LONE STAR INDUSTRIES, INC.; METALCLAD INSULATION CORP.; MET-PRO TECHNOLOGIES LLC; METROPOLITAN LIFE INSURANCE CO.; MILWAUKEE VALVE SUPPLY FORCE INVESTMENT, LLC; OLYMPIC FOUNDRY INC.; PAR SYSTEMS INC., individually and as successor to EDERER, INC., and EDERER

SERVICES, INC.; PARKER-HANNIFIN CORP.; PFIZER INC.; PYROTEK INC.; RCH NEWCO II, LLC;REFTECH INT'L CORP.; RIO TINTO AMERICA INC.; SECO/W AR WICK CORP., individually and as successor-in-interest to SUNBEAM FURNACES; SIEMENS INDUSTRY, INC.; SNELSON COS., INC.; SPIRAX SARCO, INC.; SPX FLOW, INC., individually and as successor-in-interest to JOHNSON PUMPS; SULLAIR LLC; SULZER PUMP SERVICES (US) INC.; TKD, INC., individually and as successor-in-interest to JOHNSTON PUMPS; TRANE TECHNOLOGIES CO. LLC; TWIN CITY FAN COS., LTD.; UNION CARBIDE CORP.; VELAN VALVE CORP.; VERNON NELSON CONST., INC.; VIACOMCBS INC., f/k/a CBS CORP., a Delaware corporation, f/k/a VIACOM INC., successor by-merger to CBS CORP., a Pennsylvania corporation, f/k/a WESTINGHOUSE ELECTRIC CORP.; WALTON TOOL & MFG. CO., INC.; WARREN PUMPS LLC; WEIR VALVES & CONTROLS USA INC., as successor-in-interest to ATWOOD & MORRILL VALVE CO.; and WHITING CORP.,

Defendants.